**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| INTERNATIONAL ENVIRONMENTAL MANAGEMENT, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) NO. 2:12-CV-4305-FJG |
| UNITED CORPORATE SERVICES, INC., and CT CORPORATION SYSTEM, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## ORDER

Currently pending before the Court is defendant CT Corporation System's Motion to Dismiss or in the Alternative to Stay (Doc.# 23) and United Corporate Services, Inc.'s Motion to Dismiss (Doc. #25).

### I. BACKGROUND

Plaintiff International Environmental Management, Inc. ("IEM"), is a company which provides recycling and waste reduction and management services for shopping malls. Defendants United Corporate Services, Inc. ("UCS") and CT Corporation System ("CT Corp.") are both companies which provide registered agent services for companies. In June 2006, IEM entered into an agreement with UCS, where UCS agreed to provide registered agent services in five states, including Missouri. On June 23, 2006, a certificate of authority was filed with the Missouri Secretary of State's office for IEM to conduct business in Missouri as File No. F00747488. The certificate of authority identified UCS as the registered agent for IEM. On January 26, 2007, the

certificate of authority for this File '488 was revoked by the State. In December 2007, plaintiff notified UCS that it no longer wished UCS to provide registered agent services for it. On October 18, 2007, plaintiff and CT Corp. entered into an oral agreement for CT Corp. to serve as the registered agent for plaintiff. As part of the agreement, CT Corp. agreed to prepare and file the necessary documents to indicate that it was now acting as plaintiff's registered agent. On November 5, 2007, CT Corp. filed a Change of Registered Agent form for plaintiff in File No. F00430217 ("File '217), which was an earlier file number for plaintiff that was inactive and had been superseded. CT Corp. did not file a change of Registered Agent form in File No. '488. Thus, the Missouri Secretary of State's website, continued to list UCS as plaintiff's registered agent under the most recent certificate of authority.

On August 20, 2009, Rick Sieg and Jennifer Sieg filed a petition in the Circuit Court of Boone County against IEM. The Sieg plaintiffs alleged that on June 19, 2006, Ricky Sieg was injured when he received an electrical shock from a trash compactor. On September 2, 2009, the summons and petition in the Sieg suit were delivered to UCS. UCS accepted service of the summons and petition. Plaintiff did not receive a copy of the summons and petition. On March 18, 2010, the Circuit Court of Boone County entered default judgment against plaintiff in an amount in excess of $9,700,000. Plaintiff first learned of the lawsuit and judgment in April 2011 when counsel for the Sieg's contacted IEM to collect the judgment. IEM unsuccessfully challenged the entry of the default judgment in the Missouri courts. On September 27, 2012, IEM paid the judgment, plus interest. On October 25, 2012, IEM filed a six count suit against UCS and CT Corp. in state court. IEM alleged that both defendants breached their fiduciary

duties, were negligent in their actions and breached their contracts. On December 5, 2012, defendants removed the case to this Court.

## II. STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

## III. DISCUSSION

### A. CT Corporation System's Motion to Dismiss

#### 1. Economic Loss Doctrine

CT Corp. argues that plaintiff's negligence (Count IV) and breach of fiduciary duty claims (Count VI) against it are barred by the Economic Loss Doctrine.

> In Missouri, the economic loss doctrine serves to prohibit a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184,192 (Mo.App.2010). Historically, recovery in tort for

3

purely economic damages is limited to cases where there is personal injury, damage to property other than that sold, or destruction of property sold due to some violent occurrence. <u>Autry Morlan Chevrolet, Cadillac</u> <u>Id</u>. at192.

<u>Arnold v. AT&T, Inc.</u>, No. 4:10CV2429SNLJ, 2012 WL 1441417, *11 (E.D.Mo.Apr. 26,2012). "Missouri courts have recognized rare exceptions to the economic loss doctrine. Examples include cases involving a fiduciary relationship or negligence in providing professional services." <u>Dannix Painting, LLC v. Sherwin-Williams Co.</u>, No.4:12CV01640CDP, 2012 WL 6013217, *2 (E.D.Mo. Dec. 3, 2012). In <u>American Mortgage Investment Co. v. Hardin-Stockton Corp.</u>, 671 S.W.2d 283 (Mo.App.1984), the Court noted:

> The courts of our state have never recognized the mere breach of a contract as providing a basis for tort liability. In contract, however, the complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort. In this latter instance, it is the act and not the breach of the contract which serves as the basis for the tort claim. . . . Where the parties have entered into a contract, our common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract.

<u>Id</u>. at 293 (internal citations omitted). In <u>Autry Morlan Chevrolet Cadillac</u>, the Court noted:

> [t]he allegations of the petition make it clear that the nature of the tort action asserted by [plaintiff] arises from the rendering of services to be provided by a contract and that the conduct of [defendants] is the basis of the allegations and not the state of a home or product. [Plaintiff's] pleadings cite a special relationship among the parties to locate, acquire, and maintain the proper type and amount of insurance . . . [Plaintiff] alleges a duty arose from [defendant's] relationship with [plaintiff] or the status the parties created by agreement.

<u>Id</u>. at 194.

In Count IV (Negligence), IEM alleges that by operation of law, CT Corp. was IEM's agent. IEM also alleges that CT Corp. breached the duty of care and its duties as a registered agent when it failed to properly file the necessary documents with the Missouri Secretary of State. IEM alleges that CT Corp. knew or should have known that it had a more recent file number with the Secretary of State's office and knew or should have known that failing to file the change of registered agent form could result in confusion. Plaintiff also alleges that CT Corp. failed to conduct an adequate investigation into plaintiff's corporate filings and to file the correct forms. As a result of this negligence plaintiff alleges that it failed to receive notice of the Sieg suit and a default judgment was entered against it. (First Amended Complaint ¶¶ 75-85). Similarly, with regard to Count VI (Breach of Fiduciary Duty), plaintiff alleges that CT Corp. had an agency relationship with it and as such a fiduciary relationship existed between them. IEM alleges that CT Corp. owed it duties of care, disclosure, candor and honesty. IEM alleges that as part of the "set up" duties, CT Corp. agreed to prepare and file the necessary documents in order to change IEM's registered agent to CT Corp. IEM argues that CT Corp. knew or should have known that IEM had a more recent filing with the Missouri Secretary of State's office and knew or should have known that failing to file the change of Registered Agent form could result in confusion as to the correct identity of the registered agent. Plaintiff also alleges that CT Corp. knew that if it failed or neglected to correctly file the change of registered agent forms, that IEM could be exposed to the risk of a default judgment. IEM alleges that CT Corp. failed to file the forms and it did not receive notice of the Sieg suit and a default judgment was entered against it. (First Amended Complaint, ¶¶ 98-

5

107).  After reviewing the allegations contained in the Negligence and Breach of Fiduciary Duty counts, the Court finds that plaintiff has alleged that a special relationship existed between itself and CT Corp. and it was CT Corp.'s actions or inactions that forms the basis of the allegations against this defendant.  Thus, because the Court does not find that the Economic Loss Doctrine bars Counts IV or VI, the Court hereby **DENIES** CT Corp.'s Motion to Dismiss these counts.

**2. Count VI - Breach of Fiduciary Duty Claim**

CT Corp. argues that Count VI - Breach of Fiduciary claim fails because IEM cannot plead facts to establish that CT Corp. was a fiduciary.  CT Corp. argues that Missouri law recognizes two types of fiduciary relationships: those created as a matter of law and those based on a five-element test. Speaks Family Legacy Chapels, Inc. v. National Heritage Enterprises, Inc., No. 2:08-CV-04148-NKL, 2009 WL 2391769, *3 (W.D.Mo. Aug. 3, 2009).  CT Corp. argues that no Missouri case has acknowledged that a fiduciary relationship arises as a matter of law between a registered agent for service of process and its corporate client.  CT Corp. argues that the only other way that IEM can establish a fiduciary relationship is when the following five factors are present: "(1) one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, . . . must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the

6

dominant party; and (5) there must be a showing that the subservient party places trust and confidence in the dominant party." Matlock v. Matlock, 815 S.W.2d 110, 115 (Mo.App.1991). CT Corp. argues that IEM does not and cannot plead these factual elements and thus their claim should be dismissed.

In opposition, IEM argues that under Missouri law, an agent is a fiduciary within the scope of its agency. In A.G.Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386 (Mo.App. 1998), the Court stated:

> [t]here are, however, instances in which a fiduciary relationship exists absent the [five elements listed].. . .Another type of legal relationship that is universally recognized as being fiduciary in nature is the relation of an agent to his principal. An agency is a fiduciary relationship between two legal entities whereby the principal has the right to control the conduct of the agent, and the agent has the power to affect the legal relations of the principal. Restatement (Second) of Agency sections 1,12,13 (1958). An agent is a fiduciary with respect to matters within the scope of his agency.

Id. at 394 (citing Preferred Physicians Mut. Management Group v. Preferred Physicians Mut. Risk Retention, 918 S.W.2d 805,811 (Mo.App.1996)). The Court in A.G. Edwards & Sons, Inc. stated, "[o]nce an agency relationship has been established, a fiduciary relationship arises as a matter of law." Id. at 395. Thus, because the Court finds that CT Corp. was IEM's agent, the court finds that a fiduciary relationship existed between the two and IEM has stated a claim against CT Corp. for a breach of that duty. Accordingly, CT Corp.'s Motion to Dismiss the Fiduciary Duty claim is hereby **DENIED**.

### 3. Breach of Contract Claim (Count V)

CT Corp. initially moved for dismissal of the breach of contract claim on

7

ripeness grounds or alternatively to stay this claim on discretionary abstention grounds. However, in light of IEM's recent dismissal of the other litigation, CT Corp. has withdrawn its request for a stay and instead has asked for leave to answer plaintiff's breach of contract claim following this Court's disposition of the pending motions to dismiss.

### B. United Corporate Services, Inc.'s Motion to Dismiss

#### 1. Count I - Breach of Fiduciary Duty
   Count III- Breach of Contract

UCS argues that Count I should be dismissed because any fiduciary duties terminated with the agency relationship and because none of the alleged breaches involve disloyalty, dishonesty or bad faith. UCS states that in order to state a claim for a breach of fiduciary duty, plaintiff must assert: "(1) the existence of a fiduciary relationship between the parties, (2) a breach of the fiduciary duty, (3) causation, and (4) harm." Pool v. Farm Bureau Town & Country Ins. Co. of Missouri, 311 S.W.3d 895, 907 (Mo.App.2010). UCS argues that even assuming that UCS at one point had fiduciary duties to plaintiff, those duties terminated when plaintiff terminated UCS as its agent in 2007.

With regard to Count III (Breach of Contract), UCS states that plaintiff must show: "(1) the existence and terms of a contract; (2) that the plaintiff performed under the contract; (3) breach of contract by the defendant; and (4) damages suffered by the plaintiff." Lorimont Place, Inc. v. Jerry Lipps, Inc., No. ED 98455, 2013 WL 3190192, *2 (Mo.App. June 25, 2013). UCS argues that the Complaint fails to state a claim for breach of contract because all of the alleged breaches occurred after IEM

8

terminated its contract with UCS in December 2007. UCS argues that it cannot breach a contract which did not exist.

In opposition, IEM argues that once the agency agreement was terminated, UCS had a surviving duty under the common law to cease purporting to be or acting as plaintiff's agent. IEM states that after it terminated UCS, it had a duty "to file the proper forms with the Secretary of State to give notice that it was no longer the registered agent of IEM." (Plaintiff's Suggestions in Opposition, p. 11). However, this statement is incorrect. Both Missouri caselaw and Missouri statutes put the onus on the corporation to notify others when it makes a change in registered agents. Mo.Rev.Stat. §351.588 states in part:

> A foreign corporation authorized to transact business in this state may change its registered office or registered agent by delivering to the secretary of state for filing a statement of change that sets forth:
> . . .
> (5) If the current registered agent is to be changed, the name of its new registered agent and the new agent's written consent, either on the statement or attached to it, to the appointment . . .

Additionally, in Sherman, Taff & Bangert, P.C. v. Clark Equipment Co., 133 S.W.3d 125, 127 (Mo.App.2004), the Court stated, " A principal, however has a duty to notify third parties who have dealt with the principal's agent that the agency has been terminated. . . . If it does not, the principal will be bound by its former agent's acts if the third party continues to deal with the former agent as the principal's representative in ignorance of the termination."

Additionally, the Amended Complaint makes no allegations that UCS agreed to provide any post-termination duties, such as filing the Change of Registered Agent forms or notifying others that it was no longer acting as IEM's agent. The Complaint

9

only states that "In December 2007, IEM notified UCS that IEM no longer wished UCS to provide registered agent services for it, including in the State of Missouri." (Complaint ¶ 15). "UCS subsequently closed its file with regard to IEM, and filed papers in several states indicating that it was no longer acting as IEM's registered agent. But UCS filed noting with the State of Missouri indicating that it was no longer acting as IEM's registered agent in Missouri." (Complaint, ¶ 16). The Amended Complaint however, does state that on October 18, 2007, when plaintiff contracted with CT Corp. to become its registered agent, "[a]s part of this agreement, it was CT Corp.'s **obligation** to prepare and file the necessary documents in those states, including the State of Missouri, to properly change the registered agent of IEM so that CT Corp. would be listed as IEM's registered agent. After this initial 'set up' phase, CT Corp. would thereafter act as IEM's registered agent for service of process, going forward." (First Amended Complaint ¶ 17)(emphasis added).

Thus, the Court finds that plaintiff cannot state a claim breach of contract against UCS, because there was never any agreement between the parties for UCS to provide any post-termination services. Additionally, the Court also finds that plaintiff cannot state a claim for a breach of fiduciary duty because even though there was a fiduciary relationship between plaintiff and UCS, any fiduciary duties ended when plaintiff terminated UCS's services. Both Missouri caselaw and Missouri statutes state that it was IEM's responsibility to notify third parties and file the change of registered agent forms. The Complaint seems to suggest that IEM delegated this responsibility to the new registered agent - CT Corp. Regardless, the Court finds that UCS owed no fiduciary or contractual duties to IEM after its services were terminated

10

in December 2007.

### 2. Negligence

"To sue for negligence, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach was the proximate cause of the plaintiff's injuries." Stanley v. City of Independence, 995 S.W.2d 485, 487 (Mo.banc 1999). The Courts have noted that "'[d]uty' is unique among the elements of negligence 'because the existence of duty is a question of law' to be decided by the court." Miles ex rel. Miles v. Rich, 347 S.W.3d 477, 483 (Mo.App.2011)(quoting Strickland v. Taco Bell Corp., 849 S.W.2d 127,131 (Mo.App. 1993)). In Bunker v. Ass'n of Mo. Elec.Coops., 839 S.W.2d 608, 611 (Mo.App.1992), the Court stated, "[t]he common denominator that must be present is the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." "Missouri courts 'refer to the body of statutes, rules, principles and precedents which make up the law.'" Emmons v. Bridgestone Americas Tire Operations, LLC, No.1:10CV41JAR, 2012 WL 6200411, *5 (E.D.Mo.Dec.12, 2012)(quoting Ford v. GACS, Inc., 265 F.3d 670, 681(8th Cir.2001)). "Where no duty is indicated by Missouri statute, case law or otherwise, a fundamental prerequisite to establishing negligence is absent." Id. (quoting Ford, 265 F.3d at 682).

In the instant case, there was no relationship between IEM and UCS. IEM had terminated the relationship with UCS almost two years before the Sieg summons and petition was served on UCS. As discussed above, IEM did not contract with UCS to perform any post-termination filings, nor did UCS agree prospectively to accept

11

delivery of any legal papers which parties might attempt to serve upon IEM. The Missouri statutes also do not place a duty on the part of the former agent to take any action. Instead, the statutes place the responsibility upon IEM to keep its corporate records and the name of its registered agent up to date.

IEM argues that once it terminated the relationship, UCS had a surviving duty under the common law of agency "to cease acting or purporting to act" as IEM's agent. IEM states that UCS was required: 1) to file the proper forms with the Secretary of State giving notice that it was no longer the registered agent of IEM and confirm that it had been delisted as IEM's agent; 2) to refrain from accepting the Sieg summons and complaint when delivered by the process server and 3) to forward the Sieg suit papers to IEM after it accepted the service. IEM cites three cases as support for its theory that UCS had "surviving duties" which it owed to IEM. The first case Jarnagin v. Terry, 807 S.W.2d 190 (Mo.App.1991), describes a lawyer's duty to follow the instructions of his client. The case states that an agent is bound to follow the specific instructions of the principal, unless prevented from doing so by an accident or the instructions would require an act which was immoral or illegal. The case does not discuss whether any duties remain once an agency relationship has been terminated. Additionally, the other two cases cited also do not discuss whether a registered agent owes post-termination duties to a former principal. In Kahn v. Royal Banks of Missouri, 790 S.W.2d 503 (Mo.App.1990), the Court analyzed whether a husband had apparent or inherent agency power to deal with a bank on his wife's behalf. In Apollo Technologies Corp. v. Centrosphere Indus. Corp., 805 F.Supp. 1157, 1199-1200 (D.N.J.1992), the Court states only that once a company is

12

notified that its agency has been terminated, the company was prohibited from holding itself out as an agent for the former principal.

As discussed above, there is no Missouri statute which imposed any post-termination duties on UCS. Additionally, IEM has not alleged that UCS contracted or assumed any post-termination duties. Rather, the evidence from the complaint indicates that it was CT Corp. that IEM contracted with to file the necessary change of registered agent forms with the Secretary of States' offices. Additionally, the caselaw which IEM offers also does not establish that UCS owed any post-termination duties to IEM. Thus, in light of the fact that there was no duty imposed on UCS by either statute, caselaw or contract and also in consideration of the fact that IEM had terminated its relationship with UCS in December 2007, the Court find that UCS had no surviving duty to IEM. As the Court stated in Ford v. GACS, Inc., "[w]here no duty is indicated by Missouri statute, case law, or otherwise, a fundamental prerequisite to establishing negligence is absent." Id. 265 F.3d at 682. Therefore, the Court finds that IEM has failed to state a claim for negligence.

Accordingly, because the Court finds that IEM has failed to state a claim against UCS for breach of fiduciary duty, breach of contract or negligence, the Court hereby **GRANTS** UCS's Motion to Dismiss (Doc. # 25).

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** defendant CT Corporation System's Motion to Dismiss or in the Alternative to Stay (Doc.# 23) and **GRANTS** United Corporate Services, Inc.'s Motion to Dismiss (Doc. #25).

| | |
|---|---|
| Date: July 25, 2013<br>Kansas City, Missouri | **S/ FERNANDO J. GAITAN**, **JR.**<br>Fernando J. Gaitan, Jr.<br>Chief United States District Judge |