# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| INTERNATIONAL ENVIRONMENTAL MANAGEMENT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | NO. 2:12-CV-4305-FJG |
| UNITED CORPORATE SERVICES, INC., and CT CORPORATION SYSTEM, | ) ) ) | |
| Defendants. | ) ) ) | |

# ORDER

Currently pending before the Court is IEM's Motion for Summary Judgment (Doc. # 161); IEM's Motion for Reconsideration of Court's Order Dismissing IEM's claims against UCS (Doc. # 165); IEM's Motion to Stay to Permit Finalization of Settlement (Doc. # 168) and UCS's Motion for Leave to File Sur-Reply to Plaintiff's Motion to Reconsider (Doc. # 170).

## I. BACKGROUND

Plaintiff International Environmental Management, Inc. ("IEM"), is a company which provides recycling and waste reduction and management services for shopping malls. Defendants United Corporate Services, Inc. ("UCS") and CT Corporation System ("CT Corp.") are both companies which provide registered agent services for companies. In June 2006, IEM entered into an agreement with UCS, where UCS agreed to provide registered agent services in five states, including Missouri. On June 23, 2006, a certificate of authority was filed with the Missouri Secretary of State's office

for IEM to conduct business in Missouri as File No. F00747488. The certificate of authority identified UCS as the registered agent for IEM. On January 26, 2007, the certificate of authority for this File '488 was revoked by the State. In December 2007, IEM notified UCS that it no longer wished UCS to provide registered agent services for it. On October 17, 2007, plaintiff and CT Corp. entered into an oral agreement for CT Corp. to serve as the registered agent for IEM. As part of the agreement, CT Corp. agreed to prepare and file the necessary documents to indicate that it was now acting as plaintiff's registered agent. On October 31, 2007, CT Corp. filed a Change of Registered Agent form for IEM in File No. F00430217 ("File '217), which was an earlier file number for plaintiff that was inactive and had been superseded. CT Corp. did not file a change of Registered Agent form in File No. '488, the more recent file. Thus, the Missouri Secretary of State's website, continued to list UCS as plaintiff's registered agent under the most recent certificate of authority.

On August 20, 2009, Rick Sieg and Jennifer Sieg filed a petition in the Circuit Court of Boone County against IEM. The Sieg plaintiffs alleged that on June 19, 2006, Ricky Sieg was injured when he received an electrical shock from a trash compactor. On September 2, 2009, the summons and petition in the Sieg suit were delivered to UCS. UCS accepted service of the summons and petition. IEM did not receive a copy of the summons and petition. On March 18, 2010, the Circuit Court of Boone County entered default judgment against plaintiff in an amount in excess of $9,700,000. Plaintiff first learned of the lawsuit and judgment in April 2011 when counsel for the Sieg's contacted IEM to collect the judgment. IEM unsuccessfully challenged the entry of the default judgment in the Missouri courts. On September

27, 2012, IEM paid the judgment, plus interest. On October 25, 2012, IEM filed a six count suit against UCS and CT Corp. in state court. IEM alleged that both defendants breached their fiduciary duties, were negligent in their actions and breached their contracts. On December 5, 2012, defendants removed the case to this Court. On July 25, 2013, the Court granted UCS's Motion to Dismiss. On August 28, 2015, IEM and CT Corp. filed a joint motion to stay litigation to permit the parties to finalize settlement. This motion was granted on August 31, 2015. On September 15, 2015, IEM filed the instant motion asking the Court to reconsider its previous order dismissing IEM's claims against UCS. On November 19, 2015, IEM and CT Corp. filed a Joint Stipulation of Dismissal, dismissing with prejudice all claims of IEM against CT Corp.

## II. STANDARD

IEM has moved for reconsideration pursuant to Fed.R.Civ.P. 54(b). This rule provides in part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

In Jiang v. Porter, No. 4:15-CV-1008(CEJ), 2016 WL 193388, (E.D.Mo. Jan.15, 2016), the Court stated:

> [u]nder Rule 54(b), a court may reconsider an interlocutory order to correct any clearly or manifestly erroneous findings of fact or conclusions of law. . . .A motion to reconsider under Rule 54(b), however, may not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought.

Id. at *1 (internal citations and quotations omitted).

3

### III.  DISCUSSION

IEM argues that the Court erred by dismissing IEM's claims in agency against UCS.  IEM argues that pursuant to the Restatement of Agency, a former agent is liable in agency for failing to cease acting or for purporting to act as that principal's agent after its authority to act has terminated.  IEM then argues that the allegations in its complaint, taken with the admissions made by the CEO of UCS in his deposition, show that after termination of its agency, UCS continued to act as IEM's agent and accepted service on IEM's behalf at its office and then failed to transmit that process. IEM also argues that the Court erred by dismissing its claims on the grounds that no Missouri case or statute had addressed the common law rule and instead the Court should have predicted how the Missouri Supreme Court would decide the issue. IEM argues that the Missouri Supreme Court would follow the common law rule as embodied in the Restatement of Agency that an ex-agent is "responsible to the principal for damages caused to the principal by the agent's failure to obey the principal, and to cease acting as the agent, after the agency is terminated." (IEM's Suggestions in Support, p.13).

UCS argues that IEM's motion to reconsider should be denied because the argument is based on the false premise that the Sieg's achieved service of process because UCS allegedly "accepted" the service of process.  UCS argues that in Missouri, it is the offering of service by the process server that effectuates the service. Additionally, UCS argues that Missouri would not impose any post-termination duties on a registered agent.

In reply, IEM argues that UCS misunderstood its argument, which is that UCS had a duty to tell the process server that UCS was no longer IEM's agent. IEM also

4

states that it is customary amongst professional registered agents to refuse service when the process is directed at an entity which the registered agent no longer represents. Additionally, IEM argues that in order to follow Erie, where a state supreme court has followed the Restatement with respect to an area of law, it is assumed that the court would follow the Restatement with respect to an as yet unaddressed aspect of the same area of law. In this case, IEM states that UCS had "a particularly narrow, inverse form of duty: it is the negative duty to cease. . . .The common law rule in the Restatement is merely the flip side of the post-termination duties of the ex-principal that Missouri already recognizes." (IEM's Reply Suggestions, p. 7). IEM then also argues that the facts plead in the Complaint make out claims for bailment and conversion.

UCS filed a Motion for Leave to File a Sur-Reply in Opposition to Plaintiff's Motion to Reconsider (Doc. # 170). UCS argues that IEM raised four new arguments in its reply suggestions which UCS should be allowed to respond to. IEM opposes the Motion, arguing that UCS violated the Court's scheduling and trial order by filing instanter the sur-reply and also by filing a sur-reply which was three pages over-length. IEM also argues that the Court should find that no sur-reply, even if it were properly filed and within the page limitations is necessary or warranted. IEM argues that it has not improperly raised new arguments, rather it has simply developed the arguments in its opening brief and replied to arguments raised by UCS. Because this is a complex case, which has been ongoing for over three years, the Court finds that it sometimes difficult to address all of the arguments within the page allotment. Accordingly, in the interest of full consideration of the issues, the Court will consider UCS's sur-reply and IEM's suggestions in opposition. Accordingly, UCS's Motion for

5

Leave to File Instanter a Sur-Reply to Plaintiff's Motion to Reconsider is hereby **GRANTED** (Doc. # 170).

### A. Restatement of Agency

The Restatement of Agency § 8.09 – Duty to Act Only Within Scope of Actual Authority and to Comply with Principal's Lawful Instructions states:

(1) An agent has a duty to take action only within the scope of the agent's actual authority.

(2) An agent has a duty to comply with all lawful instructions received from the principal and persons designated by the principal concerning the agent's actions on behalf of the principal.

Comment b. to § 8.09 states in part:

If an agent takes action *beyond the scope* of the agent's actual authority, the agent is subject to liability to the principal for loss caused the principal. The principal's loss may stem from actions taken by the agent with apparent authority, on the basis of which the principal became subject to liability to third parties. The principal's loss may include costs the principal incurs in defending against lawsuits brought against the principal by third parties. By taking action *beyond the scope* of actual authority, an agent may become subject to a duty to provide information to the principal that is material to the principal. See § 8.11. It will often be material to the principal to know that the agent has taken unauthorized action and to know what measures may be required to repudiate any transaction stemming from the agent's unauthorized action. See id., Comment *b*. An agent's duty to take action only within the scope of actual authority survives termination of the agent's actual authority and of the agency relationship.

Restatement Agency (Third) § 8.09 (2006)(emphasis added).

IEM argues that the Court erred when it held that no Missouri case or statute had addressed the common law rule and instead the Court should have analyzed under Erie how the Missouri Supreme Court would decide this issue. IEM argues that the Missouri Supreme Court would follow the common law rule as embodied in the Restatement of Agency. IEM argues that its claim in agency is: "that an agent must cease acting as such when the agency is terminated by the principal." IEM

6

states that it is the "shortest of imaginable steps from the two tenets of law above, to a rule of liability that says the ex-agent is responsible to the principal for damages caused to the principal by the agent's failure to obey the principal, and to cease acting as the agent, after the agency is terminated." (IEM's Motion to Reconsider, p. 13). IEM states that there is no basis for concluding that Missouri would reject the application of this common law rule in this situation.

The Court however disagrees with IEM. Rather, the Court finds that the Restatement does not apply to the current factual situation because UCS did not take any action on IEM's behalf. As noted by UCS, "IEM was served not because of anything UCS did, but rather because the Sieg's process server showed up at UCS's office as a result of IEM's failure to keep its records up to date." (Suggestions in Opposition, p. 8). The Court agrees with UCS that "the sections of the Restatement cited by IEM are inapposite here because those sections relate to cases where a former agent has taken some affirmative action after the termination to alter the legal relationship vis-à-vis the former principal (or the principal's property) and a third person." (Suggestions in Opposition, p. 10). UCS states that it took no action to bring the Sieg's process server to its door. The process server came to USC's offices because CT Corp. failed to correctly effect the change of registered agent in the correct file.

Additionally, the Court finds that there is no duty imposed by the common law on UCS, because the duties and responsibilities for effecting a change in registered agents are set out in the Missouri statutes. Mo.Rev.Stat. § 351.598 lists several reasons why the Secretary of State make revoke the certificate of a foreign corporation authorized to do business in Missouri. The statute states in part:

7

The secretary of state may commence a proceeding pursuant to section 351.602 to revoke the certificate of a foreign corporation authorized to transact business in this state if:
. . .
(3) The foreign corporation is without a registered agent or registered office in this state for thirty days or more;

(4) The foreign corporation does not inform the secretary of state pursuant to section 351.588 or 351.592 that its registered agent or registered office has changed, that its registered agent has resigned, or that its registered office has been discontinued within thirty days of the change, resignation, or discontinuance. . . .

Mo.Rev.Stat. § 351.592 lists the steps that must be taken in order to revoke a registered agent's authority. The statute provides:

1. The registered agent of a foreign corporation may resign his agency appointment by signing and delivering to the secretary of state for filing the original and two exact or conformed copies of a statement of resignation. The statement of resignation may include a statement that the registered office is also discontinued.

2. After filing the statement, the secretary of state shall attach the filing receipt to one copy, and mail the copy and receipt to the registered office if not discontinued. The secretary of state shall mail the other copy to the foreign corporation at its principal office address shown in its most recent corporate registration report.

3. The agency appointment is terminated, and the registered office discontinued if so provided, on the thirty-first day after the date on which the statement was filed.

Additionally, Mo.Rev.Stat. §351.588 describes how a foreign corporation may change its registered agent. The statute states in part:

1. A foreign corporation authorized to transact business in this state may change its registered office or registered agent by delivering to the secretary of state for filing a statement of change that sets forth:

(1) Its name;
(2) The street address of its current registered office;
(3) If the current registered office is to be changed, the street address of its new registered office;
(4) The name of its current registered agent;

8

The secretary of state may commence a proceeding pursuant to section 351.602 to revoke the certificate of a foreign corporation authorized to transact business in this state if:
. . .
(3) The foreign corporation is without a registered agent or registered office in this state for thirty days or more;

(4) The foreign corporation does not inform the secretary of state pursuant to section 351.588 or 351.592 that its registered agent or registered office has changed, that its registered agent has resigned, or that its registered office has been discontinued within thirty days of the change, resignation, or discontinuance. . . .

Mo.Rev.Stat. § 351.592 lists the steps that must be taken in order to revoke a registered agent's authority. The statute provides:

1. The registered agent of a foreign corporation may resign his agency appointment by signing and delivering to the secretary of state for filing the original and two exact or conformed copies of a statement of resignation. The statement of resignation may include a statement that the registered office is also discontinued.

2. After filing the statement, the secretary of state shall attach the filing receipt to one copy, and mail the copy and receipt to the registered office if not discontinued. The secretary of state shall mail the other copy to the foreign corporation at its principal office address shown in its most recent corporate registration report.

3. The agency appointment is terminated, and the registered office discontinued if so provided, on the thirty-first day after the date on which the statement was filed.

Additionally, Mo.Rev.Stat. §351.588 describes how a foreign corporation may change its registered agent. The statute states in part:

1. A foreign corporation authorized to transact business in this state may change its registered office or registered agent by delivering to the secretary of state for filing a statement of change that sets forth:

(1) Its name;
(2) The street address of its current registered office;
(3) If the current registered office is to be changed, the street address of its new registered office;
(4) The name of its current registered agent;

> (5) If the current registered agent is to be changed, the name of its new registered agent and the new agent's written consent, either on the statement or attached to it, to the appointment; and
> (6) That after the change or changes are made, the street addresses of its registered office and the business office of its registered agent will be identical.

A close reading of the statutes listed above show that the rights and responsibilities with regard to registered agents in Missouri are already clearly delineated. The Missouri statutes provide specific ways in which the registered agents authority can be revoked and also in which a foreign corporation can change its registered agent. There is no need to look to the Restatement of Agency for answers because the Missouri statutes prescribe how changes in registered agents can be effected and when an agent's authority is terminated. Additionally, as noted in the previous order, the caselaw in Missouri does not impose any duty on the registered agent to refuse to act. Rather, the duty is put on the principal. In <u>Sherman,Taff & Bangert, P.C. v. Clark Equipment Co.</u>, 133 S.W.3d 125 (Mo.App. 2004), the Court stated:

> **A principal, however, has a duty** to notify third parties who have dealt with the principal's agent that the agency has been terminated. <u>Skates v. Preferred Fire Insurance Company</u>, 481 S.W.2d 628, 631 (Mo.App.1972). If it does not, the principal will be bound by its former agent's act if the third party continues to deal with the former agent as the principal's representative in ignorance of the termination. <u>Id</u>. <u>See also</u> <u>Brannaker v. Transamerican Freight Lines, Inc.</u>, 428 S.W.2d 524,531-532 (Mo.1968).

<u>Id</u>. at 127 (emphasis added). IEM would have the court invent and impose on former registered agents a "negative duty to cease acting." However, the Court finds that this is unnecessary because the duties and rules for changing registered agents are already established by statute and Missouri caselaw and it is clear that the duty to inform third parties of any changes rests with the principal and not with the former agent.

9

### B. Bailment and Conversion Claims

IEM argues in its reply suggestions that even if the Court were to adopt UCS's arguments, the Court should still vacate its earlier decision because the facts alleged in its complaint are sufficient to support claims for bailment and conversion.

### 1. Bailment

> The term "bailment" in its ordinary legal sense signifies a contract resulting from the delivery of a thing by the bailor to the bailee on condition that it be restored to the bailor in accordance with his directions as soon as the purpose for which it was bailed is satisfied. Where the bailor pleads and presents evidence of breach of the bailment contract by the bailee failing to return the article in an undamaged condition, the burden of proof is on the bailee to plead and prove due care on its part; "to excuse or explain his failure to return the property."

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 712 (8th Cir. 2001)(quoting Temple v. McCaughen & Burr, Inc., 839 S.W.2d 322, 326 (Mo.App.1992)).

The Court finds that the allegations in IEM's Complaint do not state a claim for bailment because there is no allegation in the pleadings that there was any kind of a bailment contract between IEM and UCS. Nor was there any allegation that IEM ever delivered anything to UCS. There are also no facts pled which would show any type of implied contract between the two parties. IEM terminated UCS's services over two years before the Siegs attempted service, thus there was no continuing relationship between the two parties. Accordingly, the Court finds that IEM's pleadings do not state a claim for bailment.

### 2. Conversion

> In order to prevail under a theory of conversion, a party must establish that it had a right to possession of the converted property at the time of the alleged conversion. Dean Mach. Co. v. Union Bank, 106 S.W.3d 510, 522
10

> (Mo.App.2003)(citation omitted). Conversion is "the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." Id. (quoting Capital Idem. Corp. v. Citizens Nat'l Bank of Fort Scott, N.A., 8 S.W.3d 893, 899-900 (Mo.App. 2000). Three elements must be established to prove conversion: (1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." JEP Enters. Inc. v. Wehrenberg, Inc., 42 S.W.3d 773, 776 (Mo.Ap.2001)(citations omitted).

Churchill in Crestwood, LLC v. Schwartz, No. 09-0100-CV-W-SOW, 2011 WL 7109212, *13 (W.D.Mo. Jan. 27, 2011).

Similarly, the Court finds that IEM's factual allegations do not state a claim for conversion. First, plaintiff cannot show that it was the "owner" of the summons and complaint. These were publicly available court records which were delivered to UCS by the Sieg's process server. With regard to the second element, IEM cannot show that UCS took possession of the pleadings with an intent to exercise control over them or that UCS deprived IEM of the right to possession of the pleadings. In Monarch Fire Protection Dist. of St. Louis County, Missouri v. Freedom Consulting & Auditing Services, Inc., 644 F.3d 633 (8th Cir. 2011), the Court stated, "[u]nder Missouri law, a copy of a document cannot be converted where the owner has not been deprived of possession of the property or prevented from utilizing the property." Id. at 637, (citing Riley v. L.J. Schuster Co., 844 S.W.2d 521,523 (Mo.App.1992)). In that case the Court found that the plaintiff had access to the relevant documents at all times and that the defendant merely retained copies. The Court found that plaintiff could not show that the defendant had deprived it of the right to possession which it was required to do in order to prove conversion. Id. Similarly, in the instant case, the Court finds that at the most UCS received or possessed copies of the petition and summons, but that it did not deprive IEM of the right to possession of these

11

pleadings. Accordingly, the Court finds that IEM's pleadings fail to state a claim for conversion.

As the Court has determined that it did not err in dismissing plaintiff's claims in agency and because the Court has also found that IEM cannot assert claims for either bailment or conversion, the Court hereby **DENIES** IEM's Motion for Reconsideration (Doc. # 165).

### C. Settlement of Claims Between IEM and CT Corporation System

On November 19, 2015, IEM and CT Corporation System filed a Joint Stipulation of Dismissal With Prejudice of all claims of IEM against CT Corp. (Doc. # 172-1). Accordingly, the Court hereby **DENIES AS MOOT** IEM's Motion for Summary Judgment on Its Breach of Contract Claim Against CT Corp. (Doc. # 161); and **DENIES AS MOOT** IEM's Motion to Stay to Permit Finalization of Settlement (Doc. # 168).

### IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** IEM's Motion for Reconsideration of Court's Order Dismissing IEM's claims against UCS (Doc. # 165); **DENIES AS MOOT** IEM's Motion for Summary Judgment (Doc. # 161); **DENIES AS MOOT** IEM's Motion to Stay to Permit Finalization of Settlement (Doc. # 168) and **GRANTS** UCS's Motion for Leave to File Sur-Reply to Plaintiff's Motion to Reconsider (Doc. # 170).

Date:  March 31, 2016            **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri            Fernando J. Gaitan, Jr.
          United States District Judge